[Argued November 17; decided December 7, 1897.]

# WICKTORWITZ *v.* FARMERS' INSURANCE COMPANY.

( 51 Pac. 75.)

1. PAYMENT OF INSURANCE PREMIUM — EVIDENCE.— Under a provision in a policy of insurance that, unless the premium be paid at the company's home office at the time the policy was issued (such payment to be evidenced only by the president's receipt accompanying the policy), or within thirty days by check or draft direct to the company, payable to the president, the policy should be null and void, a receipt in full of premium charged, and the testimony of the company's agent that he delivered the policy, collected the premium, and remitted the same to the company, less his commission, is sufficient to prove the payment of said premium.

2. PROOF OF AGENCY.*— The rule that the statements of an agent are not competent to prove his own agency applies only to such statements when made out of court, and does not restrict the right of a person to testify concerning the nature and extent of his agency for another.

3. ADMISSIONS OF AGENT — WHEN BINDING.— To have an agent's admissions bind his principal they must have been made in connection with

*NOTE.— In this connection see *Connell* v. *McLoughlin*, 28 Or. 230.— REPORTER.

some act as agent; thus, a statement by a general manager of a corporation, made in the course of a private conversation, and not in connection with or as part of any official duty is not competent evidence of the matter stated, against the principal: *North Pacific Lumber Company* v. *Willamette Mill Company*, 29 Or. 219, applied.

From Linn: GEORGE H. BURNETT, Judge.

This is an action by Selig Wicktorwitz and Company against The Farmers' and Merchants' Insurance Company of Albany, Oregon, on an insurance policy covering loss or damage by fire to the amount of $1,000 on certain personal property belonging to the plaintiffs, while situated at No. 48 Blecker Street, New York. The complaint is in the usual form alleging the issuance of the policy, the destruction of the property by fire on December 31, 1889, its value, notice to the defendant of the loss and damage, and the submission of due proofs thereof within the time required by the policy. The answer denies all the allegations of the complaint, except the incorporation of the defendant, and, for a further and separate defense, in substance alleges that on May 4, 1889, in consideration of the sum of $15 to be paid as therein provided, the defendant company agreed to, and did, issue to the plaintiffs' assignor the policy of insurance mentioned and referred to in the complaint; that one of the conditions thereof is that "if, at the time of the making of this policy, the money consideration herein named be not actually paid in lawful money to the company at its office in Albany, Oregon, which payment shall be evidenced only by a receipted bill of the company over the signature of the president, accompanying said policy, payment thereof shall then

be made within thirty days from the date of the issue of policy by bank check or draft direct to company, payable to order of the president,—otherwise this policy shall be void"; that the premium was not paid at the time of issuing the policy, or at all; and that, by reason thereof, the policy is void, and of no force or effect whatever. It is also alleged that, by the terms of the policy it is provided that "when a fire has occurred, injuring the property herein described, the assured shall use all practicable means to save and protect the same, and shall give immediate notice of the loss in writing to this company, at its office in Albany, Oregon. When personal property is damaged, the assured shall forthwith cause it to be put in order, assorting and arranging the various articles according to their kinds, separating the damaged from the undamaged, and shall cause an inventory of the whole thereof, including property claimed to be totally destroyed, to be made and furnished this company, naming the quantity, quality, and cost of each article"; that the plaintiffs utterly and entirely failed and neglected to give immediate notice of the alleged loss, in writing, to the company, at its office in Albany, Oregon, and have failed, refused, and neglected to give to the defendant any notice whatever, in writing or otherwise, of the alleged loss by fire, either at its office in Albany, Oregon, or elsewhere, and have utterly failed and refused to make or cause to be made any inventory of such personal property alleged to have been destroyed by fire, including that alleged to have been totally destroyed, naming the quantity, quality, and cost of such articles, or to furnish the

same at any time to the defendant. The reply denies the allegations of the answer, and alleges that the premium was paid to the defendant through its general agent in the City of New York, and that it received and applied the same to its own use, less the agent's commission, and thereby waived the right to have it paid at its home office by bank check or draft payable to the order of its president; and that the plaintiffs duly gave notice of their loss to the defendant, and also furnished due proof thereof, as alleged in the plaintiff's complaint herein; and that defendant received the same, and never made any objection thereto, and never demanded of plaintiffs any other or further proof of loss, or an inventory concerning said property, at any time; and that defendant thereby waived its right to, and should be estopped from, setting up such defense at the trial of this cause. Upon the issues joined, a verdict and judgment was rendered in favor of plaintiffs. From this judgment the defendant appeals, alleging error in the admission of testimony, and in overruling its motion for a nonsuit.

REVERSED.

For appellant there was a brief over the name of *Weatherford & Wyatt*, with an oral argument by *Mr. James K. Weatherford*.

For respondent there was a brief and an oral argument by *Mr. O. H. Irvine*.

MR. JUSTICE BEAN, after making the foregoing statement, delivered the opinion of the court.

1.   The contention for the defendant is—*first*, that there was no sufficient proof of payment of the premium, in accordance with the terms of the policy; and, *second*, that there was no legal evidence that notice of the fire or proof of loss had been given to the defendant company, as required by the terms of the policy.   Upon the first question it is enough to say that the evidence shows the application for the insurance to have been made to one J. M. Lewis, who was an agent or representative of the company in New York, and by him forwarded to the home office, where it was approved, and the policy issued, and forwarded to Lewis, for delivery to the assured.   Lewis subsequently delivered the policy, collected and remitted the premium, less his commissions, to the company, and its receipt thereof was introduced in evidence, and this is sufficient proof of its payment.

2.   Upon the other question the evidence is that, after the fire, Lewis was notified thereof, and proceeded to effect an adjustment of the loss, proof of which was furnished to him within the time required by the policy.   The objections to the admission of the testimony, as well as the motion for a nonsuit on this branch of the case, are all based upon the hypothesis that there was no competent evidence to show that Lewis was in fact an agent of the company, with authority to settle and adjust losses, and receive notice and proof thereof, at the time of the fire.   The only testimony bearing on the question of his agency and authority in this regard, aside from his assuming to act for the company, is that of himself and Judge Hewitt.   Lewis, whose evidence was taken by depo-

sition in New York, testified that for some time prior to October 22, 1889, he had been in the habit of procuring policies of insurance from the defendant company by correspondence, and that the policy in suit was so procured, but that, on the day named, he entered into a written agreement to represent the defendant as its agent in issuing policies, collecting premiums, adjusting losses, and otherwise representing it, east of the Rocky Mountains, and that he acted under this authority in adjusting the loss and receiving and forwarding notice and proof thereof. Being asked to produce and deliver his commission to the officer taking his deposition, so that it could be made a part thereof, he refused to part with the original, but delivered a copy, which was attached to and made a part of his deposition. Upon the objection of the defendant, however, the court refused to permit this copy to be read in evidence, on the ground that it was incompetent. Judge Hewitt testified that he was one of the attorneys who commenced this action; that after its commencement, in the course of a general conversation with Mr. Elderkin, the secretary and general manager of the defendant company, in the City of Albany, Elderkin said that Lewis was the agent of the defendant in the City of New York, and that a certain paper which the witness then exhibited to him was a copy of his commission. This paper was offered and received in evidence, over the objection of the defendant that it was incompetent, and not the best evidence, and that no proper foundation had been laid for the introduction of secondary evidence of the contents of the original commission.

The objection urged to the testimony of Lewis is based upon the well established rule that the mere declarations of an agent are not competent testimony to prove the fact of agency. But this rule does not prevent him from testifying in court upon the subject. It has reference only to proof of the declarations of an alleged agent made out of court, and not to such as he may make under oath as a witness. The testimony of an agent as to the nature and extent of his authority, when it rests in parol, is as competent as the testimony of any other witness who may have knowledge on the subject. " It is competent to prove a parol agency, and its nature and scope," says Mr. Justice VALENTINE in *Howe Machine Company* v. *Clark,* 15 Kan. 494, " by the testimony of the person who claims to be the agent. It is competent to prove a parol authority of any person to act for another, and generally to prove any parol authority of any kind, by the testimony of the person who claims to possess such authority. But it is not competent to prove the supposed authority of an agent, for the purpose of binding his principal, by proving what the supposed agent has said at some previous time. Nor is it competent to prove a supposed authority of any kind, as against the person from whom such authority is claimed to have been received, by proving the previous statements of the person who it is claimed had attained such authority." It is clear, therefore, that Lewis was a competent witness; but, as it appears and is admitted that his authority at the time of the fire was conferred by a written instrument, the writing is, of course, the best evidence of the nature and extent of his agency, and, in accordance

with the familiar rules of evidence, must be produced, or, if not, its absence must be satisfactorily accounted for, before parol evidence of its contents is admissible; and hence his oral testimony as to the nature and extent of his authority was incompetent. It might be suggested, however, in this connection, that his refusal to permit his original commission to be made a part of his deposition is a sufficient showing of diligence on the part of the plaintiffs for the admission of secondary evidence of its contents. But that question is not before us, because the court below ruled out the copy annexed to the deposition, and it is not a part of the record here.

3. The paper introduced in evidence as a copy of his commission was not shown to be such except by the admissions of Elderkin, the general manager of the company, made to Judge Hewitt, and such admissions were incompetent as evidence to bind the defendant. The rule is well settled that the admissions of an agent to bind his principal must be made at the time and as a part of some act in the execution of his authority: 1 Greenleaf on Evidence, § 113; *Cunningham* v. *Cochran*, 52 Am. Dec. 230, and note. There is no evidence that Elderkin was doing any act within the scope of his authority at the time he made the alleged admissions. They were made in the course of a general conversation with Judge Hewitt about the agencies of the company, and we know of no rule of law that will justify the admission in evidence of the declarations or admissions of the general manager of a corporation to charge the company simply because he is such. If, in the performance of some act within

the scope of his authority, he makes an admission which is part of the res gestæ, such admission is admissible in evidence against his principal, because it is a part of the act; and it is only when the acts of an agent will bind his principal that his representations, declarations, and admissions respecting the subject matter become competent evidence for that purpose: *North Pacific Lumber Company* v. *Willamette Mill Company*, 29 Or. 219 (44 Pac. 286). Eliminating from this case the oral testimony of Lewis as to the nature and extent of his agency, and what purports to be a copy of his commission, introduced in evidence, all which, as we have said, is incompetent, there remains no evidence whatever showing or tending to show that Lewis had authority to adjudicate losses or accept notice and proof thereof; and for this reason the judgment of the court below must be reversed, and the cause remanded for a new trial.

REVERSED.

WOLVERTON, J., being interested in the result, took no part in this decision.